FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 2 2 2022

TAMMY H. DOWNS, CLERK
By:_____
                    DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| TYRELL KING, individually and on behalf of all others similarly situated,<br><br>v.<br><br>PEPSICO, INC. | Case No. 4:22-CV-360-KGB<br>Fed. R. Civ. P. 23 Class Action<br><br>This case assigned to District Judge Baker<br>and to Magistrate Judge Volpe |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

### Summary

1.   Like many other companies across the United States, PepsiCo's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.   That hack led to problems in timekeeping and payroll throughout PepsiCo's organization.

3.   As a result, PepsiCo's workers who were not exempt from the overtime requirements under Arkansas law, were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4.   Tyrell King is one such PepsiCo worker.

5.   PepsiCo could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6.   But it didn't. Instead, PepsiCo used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7.   PepsiCo pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. PepsiCo's failure to pay wages, including proper overtime, for all hours worked violates the Minimum Wage Act of the State of Arkansas ("AMWA"), ARK. CODE ANN. § 11-4-201 *et seq.*

10. King brings this lawsuit to recover these unpaid overtime wages and other damages owed by PepsiCo to him and the non-overtime-exempt workers like him, who were the ultimate victims of not just the Kronos hack, but also PepsiCo's decision to make its front-line workers bear the economic burden for the hack.

11. This action seeks to recover the unpaid wages and other damages owed by PepsiCo to all these workers, along with the penalties, interest, and other remedies provided by Arkansas law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between the Parties and the amount in controversy exceeds $75,000.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

14. King worked for PepsiCo in this District.

## PARTIES

15. **Plaintiff Tyrell King** is a natural person.

16. King is a resident and citizen of Arkansas.

17. King has been, at all relevant times, an employee of PepsiCo.

18. King has worked for PepsiCo since December 2021.

19. King has, at all relevant times, worked for PepsiCo in Arkansas.

20. King represents a class of similarly situated workers under Arkansas law pursuant to Federal Rule of Civil Procedure 23. This "Arkansas Class" is defined as:

> **All current or former non-exempt employees of PepsiCo, including its subsidiaries and alter egos, who in Arkansas at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

21. Throughout this Complaint, the Arkansas Class Members are also referred to as the "Similarly Situated Workers."

22. **Defendant PepsiCo, Inc. ("PepsiCo")** is a North Carolina corporation.

23. PepsiCo maintains its headquarters and principal place of business in New York.

24. PepsiCo conducts business in a systematic and continuous manner throughout Arkansas and this District.

25. PepsiCo may be served by service upon its registered agent, **CT Corporation System, 124 West Capitol Ave., Ste. 1900, Little Rock, AR 72201**, or by any other method allowed by law.

26. At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

27. At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

28. At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

29. PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, King and the Similarly Situated Workers.

30. PepsiCo and its respective subsidiaries and alter egos are joint employers for purposes of Arkansas law.

## FACTS

31. PepsiCo is a food, snack, and beverage corporation.

32. Many of PepsiCo's employees are paid as non-exempt hourly and salaried workers.

33. Since at least 2021, PepsiCo has used timekeeping software and hardware operated and maintained by Kronos.

34. On or about December 11, 2021, Kronos was hacked with ransomware.

35. The Kronos hack interfered with its clients, including PepsiCo's, ability to use Kronos's software and hardware to track hours and pay employees.

36. Since the onset of the Kronos hack, PepsiCo has failed to keep accurate track of the hours that King and Similarly Situated Workers have worked.

37. Instead, PepsiCo has used various methods to estimate the number of hours King and Similarly Situated Workers work in each pay period.

38. For example, PepsiCo issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

39. As a result of PepsiCo's failure to accurately track the actual hours worked by its employees each week, employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

40. Many employees were not even paid for all their non-overtime wages for hours worked before 40 in a workweek.

41. King is one of the thousands of PepsiCo employees affected by these pay and timekeeping practices.

42. Instead of paying King for the hours he actually worked (including overtime hours), PepsiCo simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** King's actual hours, in multiple workweeks.

43. In some instances, King was paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x his agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonuses.

44. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

45. PepsiCo knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

46. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

47. PepsiCo knows it has to pay the wages it agreed to pay its employees.

48. PepsiCo knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

49. PepsiCo could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

50. Instead of accurately tracking hours and paying employees' wages and overtime, PepsiCo decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

51. Even to the extent it did pay some overtime to affected employees, PepsiCo failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Asurion did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

52. It was feasible for PepsiCo to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

53. But PepsiCo chose not to do that.

54. In other words, PepsiCo pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, maKing sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

55. King is one of PepsiCo's employees who had to shoulder the burden of this decision by PepsiCo.

56. King was and is a non-exempt hourly employee of PepsiCo.

57. King regularly works over 40 hours per week for PepsiCo.

58. King's normal, pre-Kronos hack hours are reflected in PepsiCo's records.

59. Since the Kronos hack, PepsiCo has not paid King for his actual hours worked each week.

60. Since the hack took place, PepsiCo has not been accurately recording the hours worked by King and its other workers.

61. Even though PepsiCo has had King record and submit his hours, PepsiCo has not issued proper payment for all hours worked.

62. Even when PepsiCo has issued payment to King for any overtime, the overtime is not calculated based on King's regular rates, as required by Arkansas law.

63. PepsiCo was aware of the overtime requirements of Arkansas law.

64. PepsiCo nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as King.

65. PepsiCo's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the MWHL.

66. The full overtime wages owed to King and the Similarly Situated Workers became "unpaid" when the work for PepsiCo was done—that is, on King and the Similarly Situated Workers' regular paydays.

67. At the time PepsiCo failed to pay King and the Similarly Situated Workers in full for their overtime hours by their regular paydays, PepsiCo became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under the law.

68. In other words, there is no distinction between late payment and nonpayment of wages under the law.

69. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law.

70. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to PepsiCo's acts and omissions resulting in the unpaid wages in the first place.

71. King and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by PepsiCo under Arkansas law.

## CLASS ACTION ALLEGATIONS

72. King incorporates all other allegations.

73. The illegal practices PepsiCo imposed on King were likewise imposed on the Arkansas Class members.

74. Numerous other individuals who worked for PepsiCo were not properly compensated for all hours worked, as required by Arkansas law.

75. The Arkansas Class is so numerous that joinder of all members of the class is impracticable.

76. PepsiCo imposed uniform practices and policies on King and the Arkansas Class members regardless of any individualized factors.

77. Based on his experience and tenure with PepsiCo, as well as coverage of the Kronos hack, King is aware that PepsiCo's illegal practices were imposed on the Arkansas Class members.

78. Arkansas Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

79. PepsiCo's failure to pay wages and overtime compensation in accordance with Arkansas law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Arkansas Class members.

80. PepsiCo's failure to pay wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Arkansas Class members.

81. King's experiences are therefore typical of the experiences of the Arkansas Class members.

82. King has no interest contrary to, or in conflict with, the members of the Arkansas Class. Like each member of the proposed class, King has an interest in obtaining the unpaid wages and other damages owed under the law.

83. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

84. Absent this action, many Arkansas Class members likely will not obtain redress of their injuries and PepsiCo will reap the unjust benefits of violating Arkansas law.

85. Furthermore, even if some of the Arkansas Class members could afford individual litigation against PepsiCo, it would be unduly burdensome to the judicial system.

86. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

87. The questions of law and fact common to each of the Arkansas Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether King and the Arkansas Class members were paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek; and

   b. Whether PepsiCo's failure to pay King and the Arkansas Class members overtime at the rates required by law violated Arkansas law.

88. King's claims are typical of the Arkansas Class members. King and the Arkansas Class members have all sustained damages arising out of PepsiCo's illegal and uniform employment policies.

89. King knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

90. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

### CAUSE OF ACTION—VIOLATIONS OF THE AMWA

91. King incorporates all other allegations.

92. The conduct alleged in this Complaint violates the Minimum Wage Act of the State of Arkansas ("AMWA"), ARK. CODE ANN. § 11-4-201 *et seq.*

93. At all relevant times, PepsiCo was and is an "employer" within the meaning of the AMWA. ARK. CODE ANN. § 11-4-203(4).

94. At all relevant times, PepsiCo employed King and all other Arkansas Class Members as "employees" within the meaning of the AMWA. ARK. CODE ANN. § 11-4-203(2)-(3).

95. The AMWA requires an employer like PepsiCo to pay employees at a rate no less than the minimum wage for each hour worked. ARK. CODE ANN. § 11-4-120.

96. As a result of PepsiCo' failure to pay King and the Arkansas Class at a rate no less than the minimum wage for all hours worked, PepsiCo violated the AMWA.

97. The AMWA requires an employer like PepsiCo to pay overtime to all non-exempt employees. ARK. CODE ANN. § 11-4-211.

98. King and the other Arkansas Class members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked at a rate of no less than 1.5x their regular rate. ARK. CODE ANN. § 11-4-211(a).

99. Within the applicable limitations period, PepsiCo had a policy and practice of failing to pay proper overtime to the Arkansas Class members for their hours worked in excess of 40 hours per week.

100. As a result of PepsiCo' failure to pay proper overtime to King and the Arkansas Class members for work performed in excess of 40 hours in a workweek, PepsiCo violated the AMWA.

101. Likewise, PepsiCo owes King and the Arkansas members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

102. The AMWA requires an employer like PepsiCo to make and keep accurate records of the name, address, and occupation of each employee, their rate of pay, and the amount paid to each employee. ARK. CODE ANN. § 11-4-217.

103. Within the applicable limitations period, PepsiCo had a policy and practice of failing to provide their employees with the wage statements required by the AMWA.

104. As a result of PepsiCo' failure to provide the wage statements required by the AMWA, PepsiCo violated the AMWA.

105. Because PepsiCo willfully failed to pay King and the Arkansas Class their earned wages and overtime compensation, King and the Arkansas Class are entitled to recover liquidated damages.

106. King and the Arkansas Class members are entitled to recover their unpaid wages, liquidated damages, attorneys' fees, costs, penalties, and all other legal and equitable relief provided under the AMWA. ARK. CODE ANN. § 11-4-218(a).

## RELIEF SOUGHT

King prays for judgment against PepsiCo as follows:

a. For an order certifying a class action for the Arkansas law claims;

b. For an order finding PepsiCo liable for violations of state wage laws with respect to King and all Arkansas Class members covered by this case;

c. For a judgment awarding all unpaid wages, liquidated damages, and penalties, to King and all Arkansas Class members covered by this case;

d. For an equitable accounting and restitution of wages due to King and all Arkansas Class members covered by this case;

e. For a judgment awarding attorneys' fees to King and all Arkansas Class members covered by this case;

f. For a judgment awarding costs of this action to King and all Arkansas Class members covered by this case;

g. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to King and all Arkansas Class members covered by this case; and

h. For all such other and further relief as may be necessary and appropriate.

Dated: Apr. 21, 2022

Respectfully submitted,

By: _____
**Matthew S. Parmet**
TX # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**